H. B. GLOVER CO. v. BLADINE, Collector of Internal Revenue.

District Court, N. D. Iowa, E. D. July 14, 1928.

No. 284.

Internal revenue ⬥25—Claim In abatement for decreased value of inventories, due to price decline, filed with income tax return, held not binding revaluation; "temporary fluctuation;" "substantial loss resulting from material reduction of inventory" (Revenue Act 1918, § 234(a), subd. 14(a); Comp. St. § 6336⅛pp(a), subd. 14(a); Regulations, arts. 263–267).

Under Revenue Act 1918, § 234(a), subd. 14(a), Comp. St. § 6336⅛pp(a), subd. 14(a), authorizing taxpayer to file claim in abatement based on substantial loss resulting from material reduction, not due to temporary fluctuation, of inventory value for taxable year, and Regulations, arts. 263–267, claim in abatement based on fall in prices between end of taxpayer's fiscal year and date of filing tax return was not final or binding, but was subject to changes occurring during taxable year 1919, and where prices subsequently rose during remainder of 1919, so that there was no reduction in inventory value, fall in prices was "temporary fluctuation," and taxpayer sustained no "substantial loss resulting from any material reduction of value of inventory for taxable year."

At Law. Action by the H. B. Glover Company against Lars E. Bladine, Collector of Internal Revenue for the District of Iowa. Judgment for defendant.

Hurd, Lenehan, Smith & O'Connor and James F. Ryan, all of Dubuque, Iowa, for plaintiff.

B. E. Rhinehart, U. S. Atty., of Anamosa, Iowa, Don G. Mullan, Asst. U. S. Atty., of Sioux City, Iowa, and R. E. Smith, of Washington, D. C., for defendant.

SCOTT, District Judge. This is an action at law by H. B. Glover Company, an Iowa corporation, against Lars E. Bladine, collector of internal revenue of the Iowa district, to recover $125,003.60, income and excess profits tax alleged to have been illegally exacted under the Revenue Act of 1918, approved February 24, 1919 (Comp. St. § 6336⅛a et seq.). A jury was waived and the case was tried upon an agreed statement of facts, supplemented by a small amount of oral testimony. The oral testimony largely tended to merely substantiate ultimate facts otherwise agreed upon, and I think the balance not material to a consideration of the determinative question involved.

The following facts, restated here in slightly condensed form, were agreed upon:

Plaintiff during the time involved was engaged in business as a manufacturer and

jobber of wearing apparel for men and women. On March 15, 1919, plaintiff filed with the collector of internal revenue for this district a tentative corporation income and profits tax return for its fiscal year ending November 30, 1918. On or about June 15, 1919, and timely, plaintiff filed its completed return, from which it appeared that plaintiff's net income for the taxable year of 1918 was $405,308.77, and the tax due thereon $242,169.70, which tax was assessed. At the time of filing the completed return, pursuant to provisions of section 234 (a) (14) of the Revenue Act of 1918 (Comp. St. § 6336⅛pp (a) (14), plaintiff filed its claim in abatement for the tax for said fiscal year in the sum of $87,460.36. The claim in abatement alleges:

"We have sustained a loss of $108,378.09, resulting from a reduction of the value of our inventory for the taxable year which (in our case) ended on November 30, 1918. At that time we took our inventory, as always, at cost or market price whichever was lowest. In many cases we did not know the market prices and could not get them. In such cases we used cost prices. Shortly thereafter quotations of lower prices began to arrive, and continued for a long time, each successive quotation being lower than the last. Our revaluation is as of April 15, 1919. Prices receded still further after date named."

Plaintiff furnished the bond required by said subdivision (14). Plaintiff paid the tax at the regular quarterly intervals, less the sum for which abatement was asked. Plaintiff, in determining its net income for the fiscal year ending November 30, 1918, made the inventory of its stock of goods on hand as of that date, and valued such inventory on the basis of cost or market, whichever was lower, in accordance with the Revenue Acts and Regulations of the United States Treasury Department. The value of plaintiff's inventory as of November 30, 1918, was $686,643.26, and plaintiff so stated in its return, and computed its income and excess profits taxes on the basis of such inventory. Between November 30, 1918, and April 1, 1919, there was a decline in the market value of many of the items contained in plaintiff's inventory. During the month of April, 1919, plaintiff revalued its inventory on the basis of cost or market, whichever was lower, in accordance with the Regulations of the United States Treasury Department, and its value was $578,265.17. Between December 1, 1918, and February 1, 1919, plaintiff's gross sales were: December, 1918, $97,479.-

71; January, 1919, $245,546.65; total, $343,-026.36. Plaintiff's gross purchases during the corresponding period were: December, 1918, $126,838.31; January, 1919, $151,765.-69; total, $278,604.

The Committee on Appeals and Review of the Income Tax Unit advised plaintiff, by letter of October 30, 1922, that its claim in abatement would be recommended for rejection. And the Commissioner of Internal Revenue, by letter of February 12, 1923, notified plaintiff of the rejection of its claim in abatement. On May 4, 1923, defendant made demand upon plaintiff for payment of the amount of the tax covered by the claim in abatement, adjusted to the sum of $85,322.09, and asserting that penalty and interest would be added unless paid on or before May 14, 1923. Plaintiff, to avoid accrual of penalty and interest, paid defendant, about May 5, 1923, the sum of $85,322.09. About June 29, 1923, defendant made demand on plaintiff for the payment of the sum of $39,681.51 interest.

Plaintiff, to avoid accrual of the penalty and interest referred to, paid defendant, on or about July 9, 1923, the further sum of $39,681.51. That the payments of the sums of $85,322.09 and $39,681.51, were made under protest by plaintiff at the time of payment, asserting that each of the items of tax and penalty were erroneous and illegal. On November 9, 1923, plaintiff filed with defendant its claim for refund of income and profits taxes paid for said fiscal year, and interest thereon in the sum of $127,141.87. That the Commissioner of Internal Revenue rejected plaintiff's claim for refund, and so notified plaintiff by letter dated February 9, 1924. That thereafter plaintiff made application to the Commissioner of Internal Revenue, requesting that its return for the fiscal year 1918 be considered in connection with the special relief provisions of the Revenue Act of 1918. That the Commissioner of Internal Revenue granted plaintiff's request, and as a result plaintiff was allowed an overassessment in the sum of $12,372.30. That said overassessment was refunded by check, with interest, in the sum of $2,633.32. That subsequent thereto the defendant refunded to plaintiff the further sum of $6,-615.14, which represented a portion of the interest paid July 9, 1923, with interest thereon.

On April 12, 1928, the Commissioner of Internal Revenue redetermined the tax liability of the plaintiff for the fiscal year ended November 30, 1918, under the provisions of sections 210 and 328 of the Revenue Acts

of 1917 and 1918 (Comp. St. §§ 6336⅜k, 6336⅞₁₆k), and allowed the plaintiff a further overassessment in the sum of $6,657.17. That said overassessment has been neither scheduled nor paid. The agreed facts further recite: "Plaintiff makes no claim that it sustained a loss through the sale of its inventory, nor due to depreciation on the portion of the inventory on hand November 30, 1919."

A decision of this case involves a construction of subdivision (14) of section 234 (a) of the Revenue Act, approved February 24, 1919. Subdivision (14) was not in the bill as it passed the House, nor in its exact form as it passed the Senate, although an amendment somewhat similar was added as it passed the Senate. The Senate amendment was not agreed to by the House, and a conference was asked. Managers were appointed on the part of the House and Senate, and subdivision (14) was agreed upon in conference and reported. The conference report was duly adopted, and so far as pertains to the particular difference between the two houses was as follows:

"(14) (a) At the time of filing return for the taxable year 1918 a taxpayer may file a claim in abatement based on the fact that he has sustained a substantial loss (whether or not actually realized by sale or other disposition) resulting from any material reduction (not due to temporary fluctuation) of the value of the inventory for such taxable year, or from the actual payment after the close of such taxable year of rebates in pursuance of contracts entered into during such year upon sales made during such year. In such case payment of the amount of the tax covered by such claim shall not be required until the claim is decided, but the taxpayer shall accompany his claim with a bond in double the amount of the tax covered by the claim, with sureties satisfactory to the Commissioner, conditioned for the payment of any part of such tax found to be due, with interest. If any part of such claim is disallowed then the remainder of the tax due shall on notice and demand by the collector be paid by the taxpayer with interest at the rate of 1 per centum per month from the time the tax would have been due had no such claim been filed. If it is shown to the satisfaction of the Commissioner that such substantial loss has been sustained, then in computing the taxes imposed by this title and by title III the amount of such loss shall be deducted from the net income. (b) If no such claim is filed, but it is shown to the satisfaction of the Commissioner that during the taxable year 1919 the taxpayer has sustained a substantial loss of the character above described then the amount of such loss shall be deducted from the net income for the taxable year 1918, and the taxes imposed by this title and by title III for such year shall be redetermined accordingly. Any amount found to be due to the taxpayer upon the basis of such redetermination shall be credited or refunded to the taxpayer in accordance with the provisions of section 252." Comp. St. § 6336⅛uu.

The contention of plaintiff is that under subdivision (14), at the time of filing return for the taxable year 1918, it might file a claim in abatement as provided in that subdivision, and at that time definitely and finally revalue its inventory in conformity to the then prevailing market prices, and claim a reduction from its net income for the taxable year 1918, based upon the difference in market prices prevailing at the time of filing the return and market prices prevailing at the end of the taxable year 1918; that in redetermining the value of its inventory it might revalue only such classes of goods contained in the inventory as of November 30, 1918, upon which prices had fallen, whether said goods had been sold since November 30, 1918, or were still on hand. If the rule for which plaintiff contends is applied, it is agreed that the value of the inventory would be reduced in the sum of $108,378.09.

It is the defendant's contention that the inventory must be taken as a whole, and advances as well as declines in prices as applied to the different classes of goods considered, and that the price level existing at the time of the filing of the return is not final, but is subject to changes occurring during the remainder of the taxable year 1919; that, while conceding the fall in prices upon some classes of merchandise contained in plaintiff's inventory at the time of the filing of its return, the prices as to other classes had not fallen, and that following the filing of the return, and at the close of the taxable year 1919, prices had so risen that there was no reduction in the value of the inventory, but an increase, and that the particular fall in prices on some articles in plaintiff's inventory at the time of filing its return was "temporary fluctuation"; that, therefore, plaintiff had sustained no substantial loss "resulting from any material reduction (not due to temporary fluctuation) of the value of the inventory for such taxable year," within the meaning of said subdivision (14).

The question then occurs: What is the

scope of the right created and the remedy prescribed by subdivision (14), and particularly by clause (a) of that subdivision relating to claims in abatement? At the outset it may be helpful to consider the character of the remedy imported by the expression "claim in abatement." This remedy has been recognized to varying extents in the various income tax laws. Holmes, in his work on Income Taxes (section 816, sixth edition), says: "Claims in abatement are applicable to taxes which have been assessed, but not yet paid. Their purpose is to afford the taxpayer an opportunity for administrative review prior to the payment of the tax in cases in which appeals and hearings are not otherwise permitted or required by law."

In Rock Island, Arkansas & Louisiana R. Co. v. United States, 254 U. S. 141, 41 S. Ct. 55, 65 L. Ed. 188, Mr. Justice Holmes, speaking for the Supreme Court, clearly draws the distinction between claims in abatement and appeals. In that case the tax was assessed and a claim in abatement filed and rejected. Without further proceedings, suit was begun to recover the tax as illegally assessed. Mr. Justice Holmes says:

"By Rev. Stats. § 3226, amended by Act of February 27, 1877, c. 69, § 1, 19 Stat. 248 [26 USCA § 156], no suit shall be maintained in any court for the recovery of any tax alleged to have been illegally assessed 'until appeal shall have been duly made to the Commissioner of Internal Revenue, according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof, and a decision of the Commissioner has been had therein: Provided,' etc. Regulations of the Secretary established a procedure and a form to be used in applications for abatement of taxes and distinct ones for claims for refunding them. The claimant took the first step, but not the last.

"By Rev. Stats. § 3220 [26 USCA § 149], the Commissioner of Internal Revenue is authorized, 'on appeal to him made, to remit, refund, and pay back' taxes illegally assessed. It is urged that the 'appeal' to him to remit made a second appeal to him to refund an idle act and satisfied the requirement of section 3226. Decisions to that effect in suits against a collector are cited, the latest being Loomis v. Wattles (C. C. A.) 266 F. 876. But the words 'on appeal to him made' mean, of course, on appeal in respect of the relief sought on appeal—to refund, if refunding is what he is asked to do. The words of section 3226 also must be taken to mean an appeal after payment, especially in view of section

3228 [26 USCA § 157], requiring claims of this sort to be presented to the Commissioner within two years after the cause of action accrued. So that the question is of reading an implied exception into the rule as expressed, when substantially the same objection to the assessment has been urged at an earlier stage."

The Supreme Court declined to pronounce the requirement for the appeal after the claim in abatement had been rejected a mere form, and affirmed a judgment of the Court of Claims dismissing the petition on the ground of failure to comply with the statute requiring an appeal. The Circuit Court of the District of New Jersey had held likewise in Hastings v. Herold, 184 F. 759, a decade earlier.

So far as literature and authority upon the question has been found, the office of a claim in abatement seems to be principally to suspend necessity for payment of the tax until its legality or the merits of some claimed reduction can be heard and determined. Ruling on a claim in abatement, however, is not a final determination by the administrative or executive department. Counsel for plaintiff in the instant case seems to have recognized that principle, for, after the rejectment of their claim in abatement, they paid the tax and filed a claim for refund of the amount, and awaited rejection of that claim before beginning suit.

Subdivision (14) of section 234 (a) seems to provide two distinct remedies to the taxpayer, the one temporary and provisional, and the other final, so far as administrative remedies are concerned. Clause (a), permissive and provisional, allowed the taxpayer to file a claim in abatement at the time of filing his return. The consequence was that "in such case payment of the amount of the tax covered by such claim shall not be required until the claim is decided," etc. And if any part of the claim was rejected, interest at the usual rate only was provided for. The taxpayer was excused from paying the tax in dispute at the usual time, and also avoided the 5 per cent. penalty provided for in section 250 (e), Comp. St. § 6336⅛tt (e), for that section says: "Provided, that as to any such amount which is the subject of a bona fide claim for abatement such sum of 5 per centum shall not be added and the interest from the time the amount was due until the claim is decided shall be at the rate of ½ of 1 per centum per month." This provisional remedy, however, is at the option of the taxpayer; he may pay the tax under protest and ignore it, and still file a claim for

refund under clause (b). Clause (b), in providing for the refund, I think affords the taxpayer a final administrative remedy, and would probably satisfy the requirement for appeal specified in Rev. Stats. §§ 3220 and 3226, inasmuch as the claim for refund can only be made after the payment of the tax, and to the particular officer specified in Rev. Stats. § 3226.

Here, then, are two remedies, one provisional and one final, each adapted to its respective purpose, and each having a distinct and established procedure provided by the Secretary of the Treasury. The question now occurs: Does subdivision (14) of section 234 (a) of the Revenue Act of 1918, approved February 24, 1919, create two distinct classes of right, one under clause (a), permitting the taxpayer at the time of filing return for the taxable year 1918, to definitely and finally determine the value of his inventory as of the close of the taxable year 1918, in accordance with market price conditions as they exist at the time of the filing of the return; and the other under clause (b) to await the expiration of the taxable year 1919, and avail himself of the market price conditions prevailing at that time? Or, on the other hand, does subdivision (14) of section 234 (a) create a single comprehensive right to be accorded equally and generally to taxpayers, relieving them from the hardship attendant upon the falling values of inventories during the period of the taxable year following the close of the war, and a general remedy to be worked out through the efficacy of the two distinct lines of procedure offered by clauses (a) and (b) of the section? The latter conclusion would seem most reasonable, unless opposed by a clearly expressed intention of the Congress.

The subdivision in question is not as happily worded as might be. This, however, not infrequently occurs when amendments to bills result from compromises in a conference committee. I think it not inappropriate here to call attention to some of the occurrences in the respective houses at the time of the adoption of the conference report. In the report of the managers on the part of the House appears the following:

"Amendment No. 161.—This amendment provides that, if it is shown to the satisfaction of the Commissioner that during the taxable years 1919 and 1920 the taxpayer (a) has for the first time ascertained the amount of a loss sustained during the preceding taxable year and not deducted from the gross income therefor, or (b) has sustained a substantial loss (whether or not actually realized by sale or other disposition) resulting from any material reduction (not due to temporary fluctuation) of the value of the inventory for the preceding taxable year, then the amount of such loss shall be deducted from the net income for such preceding taxable year, and the income taxes and excess profits or war profits taxes for such year shall be redetermined accordingly. The House recedes with amendments (1) limiting the allowance for losses sustained during the taxable year to losses resulting from the actual payment of rebates on sales of the previous year in pursuance of contracts made during such year; (2) limiting the deduction for falling inventories to the taxable year 1919; and (3) permitting the taxpayer to take advantage of this deduction at the time of making his return by filing a claim in abatement accompanied with a bond in double the amount of the tax covered by the claim." House of Representatives, 65th Congress, 3d Session, Report No. 1037, p. 57.

On the Senate side, Senator Simmons, speaking on the adoption of the conference report, said:

"Market values are falling, and this decline will undoubtedly proceed at a constantly accelerating rate. Under such circumstances the allowance for falling inventories, as amended by the conferees, will afford the greatest relief from the heavy taxes which the bill imposes. In general terms, where during the year 1919, by reason of a decline in values, the inventories upon which the incomes for the year 1918 were based have shrunk so as to make it apparent that the tax which would be paid in 1919, based upon these high inventories, would be based upon values that no longer exist, values that have disappeared, which will never be realized, the bill permits a reduction to the extent of the decline in the inventory values and provides that the tax for the preceding year shall be redetermined and paid upon the new basis of value, instead of upon the original inventory basis." Congressional Record, vol. 57, pt. 3, p. 3133.

From the foregoing it appears that originally the House was in favor of extending the period during which falling inventories might be considered over both years 1919 and 1920. This position, however, appears to have been receded from in conference, for the report proceeds: "The House recedes with amendments (1) limiting the allowance for losses sustained during the taxable year to losses resulting from the actual payment of rebates on sales of the previous year in pur-

suance of contracts made during such year; (2) limiting the deduction for falling inventories to the taxable year 1919; and (3) permitting the taxpayer to take advantage of this deduction at the time of making his return by filing a claim in abatement accompanied with a bond in double the amount of the tax covered by the claim."

From the language of the second clause quoted, it would seem that the conferees on the part of the House intended the entire taxable year 1919 to be the period adopted for determining whether a substantial loss had been sustained. Again, in the discussion in the Senate, Senator Simmons uses the expression: "Where during the year 1919, by reason of a decline in values, the inventories upon which the incomes for the year 1918 were based have shrunk so as to make it apparent that the tax which would be paid in 1919, based upon these high inventories, would be based upon values that no longer exist, values that disappeared, which will never be realized, the bill permits a reduction to the extent of the decline in the inventory values and provides that the tax for the preceding year shall be redetermined and paid upon the new basis of value, instead of upon the original inventory basis."

That the entire taxable year 1919 should be the test was the construction placed upon this amendment by the Secretary of the Treasury and the Commissioner of Internal Revenue, for pursuant to the provisions of the act, regulations were promptly adopted. The regulations relative to inventory losses are as follows:

"Art. 263. *Loss in Inventory.*—Inventory losses are allowable either (a) where goods included in an inventory at the end of the taxable year 1918 have been sold at a loss during the succeeding taxable year, or (b) where such goods remain unsold throughout the taxable year 1919 and at its close have a then market value (not resulting from a temporary fluctuation) materially below the value at which they were inventoried at the end of the taxable year 1918. No deduction is allowable for losses of anticipated profits or for losses not substantial in amount, nor for physical damage or obsolescence occurring in the taxable year 1919. In determining whether goods included in an inventory at the end of the taxable year 1918 have been sold during the succeeding taxable year, and whether loss has resulted therefrom, sales of goods made in the taxable year 1919 will be deemed to have been made from the in-ventoried stock of 1918 until such inventoried stock is exhausted.

"Art. 264. *Loss Where Goods Have Been Sold.*—Where goods included in the inventory at the end of the taxable year 1918 have been sold during the succeeding taxable year, the loss which may be deducted from net income for the taxable year 1918 is the amount by which the value at which the goods sold were included in the inventory exceeds the actual selling price minus a reasonable allowance for selling expenses and for manufacturing expenses, if any, incurred in the taxable year 1919 and attributable to such goods.

"Art. 265. *Loss Where Goods Have Not Been Sold.*—Where goods included in the inventory at the end of the taxable year 1918 have not been sold during the succeeding taxable year, the loss which may be deducted from net income for the taxable year 1918 is the amount by which the net income for such year would be reduced if the inventory were redetermined and such goods taken at their market value (ignoring mere temporary fluctuations of value) at the end of the taxable year 1919.

"Art. 266. *Claims.*—Claims in abatement should be filed with the collector on form 47 when the return for the taxable year 1918 is made. Claims for refund should be filed on form 46 not later than 30 days after the close of the taxable year 1919. Each claim shall contain a concise statement of the amount of the loss sustained and the basis upon which it has been computed, together with all pertinent facts necessary to enable the Commissioner to determine the allowability of the claim. The amount allowed by the Commissioner in respect of any such claim shall be deducted from the net income for the taxable year 1918 and the taxes shall be recomputed accordingly. Any excess paid over the tax due shall be credited or refunded to the taxpayer. See section 252 of the statute and articles 1031–1038. In computing income for the taxable year 1919 the opening inventory must be properly adjusted by the taxpayer in respect of any claim allowed for the year 1918 under this article.

"Art. 267. *Disposition of Claims.*—A claim for loss resulting from rebates paid or from actual sales will be decided as soon as practicable after it has been filed. A claim for loss in inventory not realized by sale will be decided only after the close of the taxable year 1919 upon the basis of any permanent reduction in the level of market values which may occur during such year

from the inventory values taken at the close of the taxable year 1918. Not later than thirty days after the close of the taxable year 1919, a taxpayer who has filed either a claim in abatement or a claim for refund, or both, shall submit to the Commissioner a descriptive statement showing the quantity and kind of all goods included in the 1918 inventory which have been (a) sold at a loss in the taxable year 1919, (b) sold at a profit during the taxable year 1919, or (c) not sold or otherwise disposed of during the taxable year 1919, together with such other information in respect of such goods as the Commissioner may require. A claim filed with the return for a loss not then realized by sale will be passed upon in the light of any sales thereafter made during the taxable year 1919. A claim filed with the return is authorized for the purpose of allowing the taxpayer to utilize, where justified, a preliminary allowance for inventory losses and not to provide a deduction essentially different from that taken by way of a claim filed at the end of the taxable year 1919."

It is, of course, clear from the foregoing that the administrative agencies of the Executive Department have placed a construction upon the amendment entirely at variance with the construction placed upon it by the plaintiff. But counsel for the plaintiff contend that the regulations are entirely at variance with the plain language of the statute. In this I think counsel are in error. I think too much stress is laid upon the fact that the claim in abatement is permitted to be filed at the time of making the return. I think counsel overlook the essential purpose of a claim in abatement. Claims in abatement are not permitted primarily as a means of redetermining the value and reducing the assessment, but to enable a taxpayer, having reasonable anticipation of a substantial loss on account of falling market values, to abate the necessity of immediate payment of heavy and burdensome taxes before their amounts can be finally determined. In the instant case plaintiff by filing the claim in abatement was enabled to withhold the sum of more than $87,000, without incurring the penalty that would be otherwise imposed. But by filing the claim in abatement I do not understand that plaintiff was conclusively bound by the amount of the abatement claimed. Inventories might have continued to fall during the balance of the year 1919, and in such case I think a claim for refund could have been made at the end of the taxable year 1919, notwithstanding its

27 F.(2d)—23

filing of its claim in abatement. Indeed, the plaintiff did file after the expiration of the year 1919, just such a claim.

It seems to me that plaintiff's contention relative to clauses (a) and (b) of subdivision (14), if adopted, would lead inevitably to two antagonistic standards of relief to taxpayers. To illustrate: Let there be supposed two concerns, such as the Plaintiff, A and B, each with substantially the same inventories. A, adopting plaintiff's theory, files a claim in abatement on April 15, 1919, claiming a loss of $100,000. And suppose that prices have so fallen that at that date the plaintiff's inventory has actually shrunk to that extent. B files no claim in abatement, but waits until the end of the year and files its claim for refund, based upon an actual and substantial loss alleged to be $200,000. And suppose that prices had continued to fall throughout the year, until the inventories of both A and B had actually shrunk to the extent of $200,000, and each had sustained a loss to that extent. Now, upon plaintiff's theory of a definite and final determination of the loss at the date of the filing of the return, the Commissioner of Internal Revenue must allow A a reduction of $100,000, and at the same time allow B a reduction of $200,000, merely because B had not filed a claim in abatement. I do not think it was the intention of Congress to permit a definite and final redetermination of the value of the inventory for the year 1918, at the time of filing the return.

The expression in clause (a) "not due to temporary fluctuation" I think supports this conclusion. It must be borne in mind that the normal taxable year 1918 ended December 31st, and a prepondering proportion of taxpayers closed their fiscal year at that date. The normal returns are filed March 15th, unless by grace extended. Thus there intervenes but 2½ months between the end of the normal fiscal year and the time for filing returns. I think it can hardly be supposed that Congress intended that, if within that short period of time a slump in prices should occur, a taxpayer, quick to appreciate the situation, might file a claim in abatement and thus take advantage of a temporary condition of the market, regardless of what might be the prevalence of market conditions and values throughout the balance of the year.

Nor, inasmuch as the record does not show and plaintiff does not claim that it sustained any loss by reason of sales from its inventory after November 30, 1918, nor due to

depreciation on the portion of the inventory on hand November 30, 1919, I therefore find that plaintiff has not sustained a substantial loss resulting from any material reduction (not due to temporary fluctuation) of the value of its inventory for the taxable year 1918.

It follows that the facts should be found in accordance with the stipulation filed and agreed to, with the additional ultimate fact that plaintiff has not sustained a substantial loss resulting from any material reduction (not due to temporary fluctuation) of the value of its inventory for the taxable year 1918, and judgment entered dismissing the plaintiff's petition; and it is so ordered. An exception is allowed.